IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAROL ELAINE BROADWAY,        ) | |
| )                              | |
| Plaintiff,                   ) | |
| )                              | |
| v.                           ) | CIVIL ACTION NO. 1:08CV726-SRW |
| )                              | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security,            ) | |
| )                              | |
| Defendant.                   ) | |

**MEMORANDUM OF OPINION**

Plaintiff Carol Elaine Broadway brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On December 8, 2005, plaintiff filed an application for supplemental security income. On October 23, 2007, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing. The ALJ rendered a decision on December 17, 2007. The ALJ concluded that plaintiff suffered from the severe impairments of "arthritis of the knees, morbid obesity, history of gastroesophageal reflux disease, history of hypertension and history of back spasms." (R. 17). He found that plaintiff's impairments, considered in

combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On July 23, 2008, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that the ALJ erred by: (1) failing to address a "material inconsistency" in the record -- specifically, by failing to explain the inconsistency between his RFC determination and "Dr. Ellis's noted limitation as to walking and standing and crouching" (Doc. # 13, p. 5); (2) failing to specify the weight given to Dr. Ellis' report; and (3) failing to pose a complete hypothetical to the vocational expert.

## Evidence[1]

Plaintiff filed her SSI claim on December 5, 2005, alleging disability since October 1996. (R. 56). She was born on January 31, 1964 and was 43 years of age at the time of the ALJ's decision. (R. 23, 56). Plaintiff provided records of her treatment by Dr. Taylor, plaintiff's family practice physician, during the period from June 1997 to October 2000. Plaintiff sought treatment from Dr. Taylor on six occasions between June 1997 and April 1998. (R. 99-106). She resumed treatment with Dr. Taylor sixteen months later, in August 1999, and saw him five times through January 2000 (R. 91-98). Plaintiff next sought treatment over five months later, on June 7, 2000 (R. 89-90). Her last office visit with Dr. Taylor was on October 5, 2000, more than five years before she filed the present application. Dr. Taylor listed diagnoses of: hypertension with borderline control; obesity, slightly

---

[1] Plaintiff alleges that she suffers from depression. Doug McKeown, Ph.D, performed a consultative mental status examination on January 30, 2006, diagnosing an adjustment disorder. Ellen Eno, Ph.D., a non-examining psychologist, completed a mental RFC form, expressing some limitations. (Exhibits 2F and 4F). The ALJ found that plaintiff had failed to establish the existence of a severe mental impairment which meets the 12-month duration requirement. (R. 17-18). Plaintiff does not challenge this finding. The court, accordingly, will not further address the evidence regarding plaintiff's mental status. The ALJ's determination on this point is supported by substantial evidence.

increased; pernicious anemia, apparently improving; renal insufficiency with marked improvement noticed; dyspepsia, controlled; and suspected restless leg syndrome. (R. 87-88). Plaintiff's weight was 300 pounds, and her blood pressure reading was 120/90. (R. 88).

Plaintiff twice sought treatment from Southern Bone & Joint Specialists -- once on September 1997 and again on October 6, 1999. (Exhibit 8F). On September 24, 1997, plaintiff reported low back pain and pain in her right knee after she fell with all of her weight landing on her right knee. Dr. Lolley diagnosed chronic right knee sprain with minimal degenerative changes and chronic lumbar strain. He prescribed medication, ice and quad exercises. He advised plaintiff to "[a]void excessive squatting, kneeling and climbing activities[,]" and asked her to "begin a good walking program and a diet for attempt at weight loss increasing activities slowly as tolerated." (R. 150-52).

Two years later, on October 6, 1999, plaintiff saw Dr. Robert Moore, complaining that her symptoms had become more severe. He noted that she was "extremely obese[.]" Otherwise, he noted no abnormal clinical findings -- he observed that "[e]xamination of the lumbar spine does not reveal any scoliosis, pelvic tilt or muscle spasm. She has a negative straight leg raising, normal neurologic exam and no atrophy. She was [sic] walk on her heels and toes without difficulty." He diagnosed chronic lumbar strain. He prescribed medications and advised plaintiff to return if there were no improvement. (R. 149). Although plaintiff was then on Medicaid (id.), the record reflects no further treatment from Southern Bone & Joint Specialists. (Exhibit 8F).

Plaintiff sought treatment at the emergency room of Southeast Alabama Medical Center on July 16, 2001 for a low back spasm with moderate pain radiating to her right thigh.

She reported that she had hurt her back the previous day when she was getting out of bed, and that muscle spasms had started a half hour before she arrived at the ER. The ER physician diagnosed acute lumbar myofascial strain. He administered medication and discharged the plaintiff. (R. 173-77). Five months later, on December 10, 2001, plaintiff returned to the ER complaining of back spasms. She reported that she had fallen the previous night while bringing in a Christmas box. The ER physician diagnosed acute low back pain and discharged the plaintiff with prescriptions for Ultram, Norflex, and Naprosyn. (R. 164-72). Plaintiff next sought treatment at the emergency room on September 22, 2003, when she complained of a headache which had lasted for three days. Plaintiff was diagnosed with a tension headache and discharged with prescriptions for medication. (R. 153-63).[2]

On January 31, 2006, Mark Ellis, D.O., performed a consultative physical examination of the plaintiff. (R. 114-20). His impressions were:

> Low back pain, unclear etiology. Arthritis of the hands and knees with fairly advanced disease noted in the right knee. Plain film x-rays. Gastroesophageal reflux disease. Hypertension. Obesity. Hyperlipidemia.

(R. 118). He concluded:

> Patient walks with a slow gait today is not using any type of hand-held assistance device for walking. Patient is noted to have arthritic changes in the hands and knees as described above. Range of motion is limited in multiple joints secondary to causing pain in both those joints and also in the back. A

---

[2] The record contains evidence of the results of blood testing performed at Southeast Alabama Medical Center in May 2001, December 2002, and April 2004 at the request of Dr. Joseph Sugg of the Family Health Clinic in Dothan. (Exhibit 10F). The record contains no treatment notes associated with or interpreting these laboratory testing results. If those records exist, it was plaintiff's burden to produce them. "The burden is on the claimant to show that she is disabled and, therefore, she is responsible for producing evidence to support her application." McCloud v. Barnhart, 166 Fed. Appx. 410, 418 (11th Cir. 2006)(citations omitted).

>  plain film x-rays of the back there is some slight rotation but no fractures nor dislocations are noted. Patient is able to manipulate objects with both hands. Did complain of pain in both hands with grip strength testing.

(R. 118).

## Plaintiff's Contentions

Plaintiff's first contention is that the ALJ erred by failing to address a "material inconsistency" in the record – specifically, by failing to explain the inconsistency between his RFC determination and "Dr. Ellis's noted limitation as to walking and standing and crouching." (Doc. # 13, p. 5). The ALJ concluded that plaintiff retains the residual functional capacity to:

> perform unskilled work at a light level of exertion to include the ability to occasionally lift or carry up to twenty pounds; stand, walk or sit for up to six hours, push or pull with hand or foot controls for an unlimited duration, occasionally climb ramps or stairs, occasionally kneel, crouch or crawl with limitations as to never being able to climb ladders, ropes or scaffolds and having to avoid concentrated exposure to hazards such as machinery and heights.

(R. 18). Plaintiff argues that her testimony that she "can only sit for 20-30 minutes before her feet go numb" and that she is only able to alternate between standing and walking for "10 minutes at the most" is "buttressed by Dr. Ellis's report which concluded that Mrs. Broadway 'is unable to stand on her toes nor heel walk nor squat secondary to her knees.'" (Doc. # 13, p. 5). The court cannot agree, for several reasons.

First, it is not at all clear– even assuming that plaintiff is unable to stand on her toes, heel walk, or squat – how this supports plaintiff's testimony regarding how long she is able to sit or to alternate between standing and walking. Additionally, the ALJ was not required

to accept plaintiff's testimony as to her limitations.  Plaintiff does not argue that the ALJ's credibility determination (R. 20-21) was flawed, and the court concludes that the ALJ has articulated adequate reasons, supported by substantial evidence, for discounting plaintiff's testimony.  Although plaintiff alleges that she has been disabled since October 2, 1996, she has sought treatment only sporadically and, when she has done so, only conservative treatment was prescribed.[3]

Further, plaintiff's argument is premised on the contention that Dr. Ellis expressed a medical opinion that plaintiff has a functional limitation precluding any squatting.  Plaintiff argues that "[a] complete inability to squat would prevent Mrs. Broadway from occasionally crouching, which the ALJ found she retained the residual functional capacity to do."  (Doc. # 13, p. 5).  Dr. Ellis, in the portion of his report on which plaintiff relies, noted that:

> On examination of the knees the patient is noted to have arthritic changes in the knees.  There is crepitus noted in both knees but no joint laxity nor any joint effusion.  Patient does complain of pain in the knees with movement of the knees and the range of motion of the knees is limited secondary to pain. Grip strength is 5/5 in each hand. No muscle spasms noted. Clinical walks with a slow gait but does not use any type of hand-held assistance device for walking. Claimant is unable to stand on her toes nor heel walk nor squat secondary to her knees.

(R. 116-17).  This discussion is found in the section of Dr. Ellis' report bearing the heading "Medical Examination."  (See R. 115).  Dr. Ellis expressed his opinion that plaintiff suffers

---

[3] Plaintiff claims that she no longer sees doctors because she cannot afford to do so.  She testified that she had sought treatment at a "free clinic" in Dothan as recently as two years before the hearing but that she did not return to the clinic because "[o]nce you start disability claims they won't see you." (R. 211-12). Even if this is so, it is reasonable to infer from plaintiff's testimony that she had access to the "free clinic" until she filed her disability claim on December 5, 2005. (R. 211). The most recent treatment note in the record (aside from the lab test result in April 2004) was the ER record of plaintiff's treatment for a tension headache on September 2003; the next most recent treatment occurred in December 2001.

from low back pain of unclear etiology, arthritis of the hand and knees with fairly advanced disease in the right knee, gastroesophageal reflux disease, hypertension, obesity, and hyperlipidemia. (R. 118). As the Commissioner argues, however, Dr. Ellis did not indicate that plaintiff has the work-related limitation of no squatting. Instead, a fair reading of the report is that, during the physical examination, plaintiff was not able to stand on her toes, heel walk or squat due to her reported pain. (R. 117).[4] As noted above, the ALJ did not err in discounting plaintiff's subjective complaints. Accordingly, this assignment of error is without merit.

Plaintiff next argues that "the ALJ erred as a matter of law when he failed to specify the weight given to Dr. Ellis's report." (Doc. # 13, p. 6). Plaintiff relies on Sharfarz v. Bowen, 825 F.2d 278 (11th Cir. 1987), in which the court stated that, "[i]n assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor." Id. at 279 (citation omitted). The Sharfarz record – in contrast to the present case – contained evidence regarding the claimant's work-related functional limitations from two treating physicians and one consultative examiner, which the ALJ rejected in favor of the functional capacity assessments rendered by two non-examining physicians. The Eleventh Circuit found that ALJ's opinion that the claimant could return to his past work at the medium exertional level was supported only by the opinions of the non-examining physicians, and that the opinions "of all of the

---

[4] The only express limitation by a physician regarding squatting was from Dr. Lolley of Southern Bone & Joint Specialists who, upon examining plaintiff in September 1997 after she fell directly onto her right knee, recommended that she "[a]void excessive squatting, kneeling and climbing activities." (R. 151).

8

treating and examining physicians support the contrary finding." Id. at 280. In McCloud v. Barnhart, 166 Fed. Appx. 410 (11th Cir. 2006), also cited by the plaintiff, the Eleventh Circuit concluded that the ALJ erred by failing to specify the weight he gave to a medical opinion that the plaintiff was "unable to sustain concentration and work for extended periods of time," when the ALJ made a contrary a finding. He further erred by failing to specify the weight he gave to the report of a state agency psychologist, when the ALJ used that report to refute medical evidence from the plaintiff's treating physicians. Id. at 419.

In the present case, in contrast, Dr. Ellis does not state his opinion regarding plaintiff's ability to perform any specific work-related functions.[5] Instead, he reports plaintiff's complaints and history, his observations upon clinical examination, and his diagnoses. There are no medical opinions of record – including Dr. Ellis' report – which conflict with the ALJ's findings regarding plaintiff's residual functional capacity. This is not a situation in which the ALJ was tasked with weighing conflicting medical opinions and required to indicate how he weighed the differing medical opinions. Accordingly, the ALJ did not err by failing to indicate the weight he accorded to Dr. Ellis' report.[6]

---

[5] While Dr. Ellis notes limited range of motion in multiple joints, he expresses no opinion translating his range of motion findings into work-related functional limitations.

[6] As the Commissioner argues, the only diagnoses included in Dr. Ellis' report which the ALJ did not address in his step two listing of plaintiff's "severe" impairments were arthritis of the hands and hyperlipidemia. Plaintiff points to no specific functional limitations caused by these diagnosed impairments. As the Commissioner notes, while Dr. Ellis observed joints in plaintiff's hands to be "slightly enlarged," and that plaintiff complained of pain on grip strength testing, he noted "[f]ull range of motion of the MCP and PIP joints of all fingers and the claimant is able to touch their thumb to each finger," "no evidence of increased warmth in any of these joints," and grip strength of "5/5 in each hand." (R. 116-17). The bases for the ALJ's conclusions are evident from the record and, accordingly, to the extent he erred by failing to state the weight he accorded to Dr. Ellis' diagnoses, the error was harmless.

9

Plaintiff's final argument is that the ALJ erred by failing "to include all her severe impairments in the hypothetical posed to the vocational experts." (Doc. # 13, p. 8). She contends that since the ALJ adopted the RFC findings of the disability specialist and since the disability specialist "only listed two of these impairments: arthritis and obesity[,]" the ALJ's question to the vocational expert necessarily omitted "three more severe impairments." (Id.). As an initial matter, the court notes that the disability specialist's RFC assessment does not omit consideration of plaintiff's GERD, back spasms and hypertension. In the block provided on the RFC assessment form for "primary diagnosis," the specialist lists "arthritis of the knees." (R. 139). In an adjoining block styled "secondary diagnosis," she lists "morbid obesity." (Id.). However, in the portion of the form which requires the specialist to explain the evidence which supports her RFC conclusions, the specialist describes – in detail – Dr. Ellis' clinical findings. She also lists his diagnoses, including GERD, hypertension and low back pain of unclear etiology. (R. 140-41). Thus, the underlying factual premise for plaintiff's argument is not as she contends.

Additionally, the ALJ's hypothetical question to the vocational expert is required to include only those functional limitations supported by the record. Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007). Plaintiff does not explain which specific functional limitations are caused by plaintiff's GERD, hypertension and back spasms and which were omitted from the hypothetical question posed to the vocational expert. Without pointing to evidence, plaintiff assumes that these severe impairments impose unidentified restrictions above and beyond those included in the ALJ's RFC finding.

10

Plaintiff's final argument is not supported by evidence of record and, accordingly, the court finds no error in the ALJ's question to the vocational expert.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the Commissioner's decision is supported by substantial evidence and proper application of the law and, accordingly, that it is due to be affirmed. A separate judgment will be entered.

Done, this 30th day of March, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE